**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Patrick Alston,

      Plaintiff,

      v.                       Case No. 2:06-cv-0491
                                   JUDGE GRAHAM

Sofa Express, Inc., et al.,

      Defendants.

### OPINION AND ORDER

This action arises out of Plaintiff Patrick Alston's ("Plaintiff") complaint for damages against Defendants Sofa Express, Inc., Eric Fuchs, and Ann Harr (collectively "Defendants"). Plaintiff alleges that Defendants violated his rights under the Family Medical Leave Act (the "FMLA") by (1) failing to restore him to an equivalent position upon his return from leave due to the birth of his daughter, and (2) subsequently terminating him after his absence from work for an FMLA-qualifying medical condition. These actions, according to Plaintiff, were discriminatory in nature and in violation of the FMLA. In addition to his FMLA claims, Plaintiff also asserts state law claims against the Defendants for breach of implied contract, breach of fiduciary responsibility, retaliatory discharge, and violation of public policy. The matter is presently before the court on the motion of Defendants for summary judgment as to each of Plaintiff's claims.

### STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam).  The moving party has the burden of demonstrating that there are no genuine issues of material fact in the case, LaPointe, 8 F.3d at 378, which it may accomplish by showing that the nonmoving lacks evidence to support an essential element of its case.  Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

In response, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).

In reviewing a motion for summary judgment, the court "must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-

2

52).  The  evidence,  all  facts,  and  any  inferences  that  may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).  Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations.  Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

## **FACTS**

Plaintiff was employed with Sofa Express from August 1998 until March 2006.  In December 2005, Plaintiff took leave from work due to the birth of his daughter.  Prior to taking leave, Plaintiff was a Delivery Supervisor on the day shift at Sofa Express and was responsible for managing warehouse employees, including delivery drivers and assistants.  In that role, Plaintiff oversaw delivery loading processes and, among various other tasks, handled a number of responsibilities related to preparing drivers to leave to make their deliveries, ensuring that driver teams complied with pre-trip policies, and resolving issues that arose while the drivers were on their deliveries.

Plaintiff returned to work in January 2006.  On Plaintiff's first day back to work, his managers, Defendants Fuchs and Harr, informed him that he would have to work second shift ("evening shift") for Sofa Express which included evening and night hours.

At the time that Plaintiff took the FMLA leave, no Delivery Supervisors had been assigned to the evening shift, but Defendants Fuchs and Harr explained to Plaintiff upon his return that the absence of a supervisor on the evening shift was creating problems for Sofa Express in that the delivery drivers were not fulfilling their duties upon returning to the warehouse at night. Defendants Fuchs and Harr further informed Plaintiff that the situation with the drivers was "getting out of hand," and that they believed that Plaintiff was likely the best person to ensure that the drivers performed their duties fully. Alston Dep. at 108-10. Plaintiff agreed with Defendants Fuchs and Harr's assessment in this regard, but was unhappy with the proposed schedule change to evening hours because it interfered with his family obligations and because he considered the change to be a demotion.

Defendants permitted Plaintiff to continue working his pre-FMLA leave schedule for the first few weeks after his return to afford him time to adjust his schedule and obligations. Plaintiff eventually provided Defendant Fuchs with a proposed schedule of new hours which he would work on the evening shift and began working the new hours. Plaintiff continued performing some of the tasks for which he was responsible prior to taking leave, but the majority of Plaintiff's hours on the evening shift were spent checking in drivers when they returned from their deliveries. Id. at 115. As a result, Plaintiff contends his responsibilities on the evening shift were significantly diminished and that he no longer performed many of the tasks for which he was accountable on the day shift. Nevertheless, Plaintiff received the same salary and reported to the same managers as he did prior to taking leave.

Plaintiff worked the evening shift in this role until March 23, 2006. On that date, Plaintiff returned to work after a two-day absence on March 21-22, 2006. Defendants informed Plaintiff that they were terminating his employment with Sofa Express because he left work on March 17, 2006, before the end of his shift without notifying his managers. Plaintiff contends that Defendants terminated his employment not because he left work prior to the end of his scheduled shift, but because he had exercised his FMLA rights. On June 2, 2006, Plaintiff filed his Complaint in state court asserting a federal cause of action for alleged violations of the FMLA, as well as state law claims for breach of implied contract, breach of fiduciary responsibility, retaliatory discharge, and violation of public policy, all resulting from Defendants' employment decisions regarding Plaintiff. Defendants removed the action to this court and have filed the motion for summary judgment presently before the court.

## ANALYSIS

### I.   FMLA Claim

In 1993, Congress enacted the FMLA to provide job security and to help employees "balance the conflicting demands of work and personal life." Price v. City of Fort Wayne, 117 F.3d 1022, 1024 (7th Cir. 1997); see also 29 U.S.C. § 2601(b). To accomplish these purposes, the FMLA provides that an eligible employee is entitled to as many as twelve weeks of leave during any twelve-month period for one or more of the following reasons:

> (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
>
> (B) Because of the placement of a son or daughter with the employee for adoption or foster care.

5

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1).  The FMLA not only provides a statutory right to take up to twelve weeks of leave for any of the enumerated purposes, but also "creates the concomitant right for an employee who has taken leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced.'" Hoge v. Honda of Am. Mfg., 384 F.3d 238, 244 (6th Cir. 2004) (quoting 29 U.S.C. § 2614(a)(1)(A)); see also Pharakhone v. Nissan N. Am. Inc., 324 F.3d 405, 407 (6th Cir. 2003) (observing the same).

Two distinct theories of recovery exist under the FMLA.  Edgar v. JAC Prodcuts, Inc., 443 F.3d 501, 507 (6th Cir. 2006).  The "entitlement" or "interference" theory "arises from § 2615(a)(1) which states that 'it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter,' and from § 2614(a), which provides that 'any eligible employee who takes leave . . . shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commences; or (B) to be restored to an equivalent position.'" Arban v. West Publ'g Corp., 345 F.3d 390, 400-01 (6th Cir. 2003)(quoting 29 U.S.C. § 2615(a)(1); 29 U.S.C. § 2614(a)(1)).  The "retaliation" or "discrimination" theory arises from § 2615(a)(2) and provides that "it shall be unlawful for any employer to discharge or in any other manner discriminate against

6

any individual for opposing any practice made unlawful by this subchapter." *Arban*, 345 F.3d at 401 (quoting 29 U.S.C. 2615(a)(2)). The court will address each of these theories as they pertain to Plaintiff's claims.

### A. Entitlement or Interference Theory

The entitlement theory is derived from the FMLA's creation of substantive rights. *Arban*, 345 F.3d at 401. Section 2614(a)(1) provides in relevant part:

> Except as provided in subsection (b), any eligible employee who takes leave . . . shall be entitled, on return from such leave –
>
> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
>
> (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1). If an employer interferes with the FMLA-created right to leave or to reinstatement following the leave, the employer has violated the employee's substantive rights under the FMLA. *Arban*, 345 F.3d at 401 (citing *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)). The right to reinstatement is the "linchpin of the entitlement theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation [that] an employee will return to work after the leave ends.'" *Edgar*, 443 F.3d at 507 (quoting *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977-78 (8th Cir. 2005)).

This right, however, is not absolute. The FMLA expressly provides that nothing in § 2614 shall be construed as entitling the

employee "to any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."  29 U.S.C. § 2614(a)(3)(B); see also 29 C.F.R. § 825.216(a)("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if he had been continuously employed during the FMLA leave period.").

To establish a claim under the entitlement theory, a plaintiff must demonstrate: (1) that he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) he was entitled to take leave under the FMLA; (4) he gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled.  Edgar, 443 F.3d at 507.

### 1.    December 2005 Leave

In December 2005, Plaintiff took FMLA leave as a result of the birth of his daughter.  Plaintiff contends that when he returned from leave, Defendants failed to reinstate him to the same or an equivalent position in violation of the FMLA.  Defendants do not dispute that Plaintiff can demonstrate each of the first four elements under an entitlement theory with regard to this claim.  Defendants contend, however, that Plaintiff cannot prove the fifth requirement: that Sofa Express denied Plaintiff FMLA benefits to which he was entitled.

Regulations promulgated by the Department of Labor ("DOL"), pursuant to its authority granted in 29 U.S.C. § 2654, provide guidance regarding the limitations on an employer's obligation to

reinstate an employee. Section 825.216(a) states in pertinent part that:

> (a) An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment. For example:
>
> * * *
>
> (2) If a shift has been eliminated, or overtime has been decreased, an employee would not be entitled to return to work that shift or the original overtime hours upon restoration. However, if a position on, for example, a night shift has been filled by another employee, the employee is entitled to return to the same shift on which employed before taking FMLA leave.

29 C.F.R. § 825.216(a). Because the employee has no greater right to a benefit or condition of employment upon his return from leave than if he had been continuously employed, the Sixth Circuit has followed the approach established by the Seventh Circuit in interpreting this regulation. Moorer v. Baptist Mem'l Health Care Sys., 398 F.3d 469, 487 (6th Cir. 2005); Arban, 345 F.3d at 401. The Sixth Circuit has held that a plaintiff's initial burden when seeking to prove a violation of the FMLA under an entitlement theory is to "'establish by a preponderance of the evidence that he is entitled to the benefit he claims.'" Arban, 345 F.3d at 401 (quoting Rice v. Sunrise Express, 209 F.3d 1008, 1018 (7th Cir. 2000)).

If the employer seeks to establish that the benefit would not have been available to the employee even if he had not taken leave, the employer must come forward with evidence to support its claim. Rice, 209 F.3d at 1018. When the employer has met its burden of

going forward, the employee must show by a preponderance of the evidence that, despite the characterization offered by the employer, the benefit is, in fact, one which the plaintiff would have received if he had not taken leave.  Id.  The employee must, in the course of establishing the right, convince the trier of fact that the contrary evidence submitted by the employer is insufficient and that the employment decision would not have occurred if he had not taken FMLA leave.  See Arban, 345 F.3d at 401 (quoting Rice, 209 F.3d at 1018).  In requiring the plaintiff to establish entitlement to the benefit he claims, the Seventh Circuit cautioned that "the regulation is best understood not as the agency's understanding as to Congress' allocation of the ultimate burden of proof in the litigation context, but as an explanation of the nature of the substantive right created by the statute."  Rice, 209 F.3d at 1018.

Here, Plaintiff claims that he was entitled to be reinstated to a "protected day shift position."  Plaintiff relies specifically on the portion of § 825.216 which provides, by way of example, that if a position on the night shift has been filled by another employee, the employee is entitled to return to the same shift on which he was employed before taking FMLA leave.  Plaintiff has come forward with no evidence, however, that his position on the day shift was filled by another employee.  Indeed, there is undisputed evidence to the contrary.  At the time that Plaintiff began his leave, no Delivery Supervisors were assigned to the evening shift.  Alston Dep. at 109.  All of the Delivery Supervisors worked the day shift, so no Delivery Supervisor took Plaintiff's day shift position upon his taking FMLA leave.  Thus, § 825.216(a)(2) is unavailing to Plaintiff.

Additionally, Defendants have come forward with undisputed evidence that Sofa Express does not make permanent shift assignments for Delivery Supervisors, thereby establishing that they could have assigned Plaintiff to an evening shift position even before he took leave. Defendants submitted the affidavits of two other Delivery Supervisors, Messrs. Stewart and Van Gundy, who both attested to the fact that their schedules changed on numerous occasions. Stewart Aff. ¶ 2; Van Gundy Aff. ¶ 2. Indeed, Mr. Van Gundy stated in his affidavit that, in his position as a Delivery Supervisor, not only did he have his schedule changed several times, but also he had been scheduled to work and did in fact work the evening shift for eight months on at least one other occasion. Id., ¶¶ 2, 4. Further, Plaintiff admitted in his deposition, that over the course of his eighteen years with Sofa Express, his schedule was changed by Sofa Express on at least thirteen different occasions. Alston Dep. at 48. Although Plaintiff stated that he had never been required to work the evening shift before, id. at 49, those schedule changes included changes in the days and hours Plaintiff was scheduled to work. Id.

Defendants also have come forward with undisputed evidence that not only could they have assigned Plaintiff to the evening shift prior to his taking leave, but also they would have done so even if he had never taken leave. In support of this position, Defendants offered the affidavit of Defendant Harr which set forth the reasons for the company's need for a Delivery Supervisor on the evening shift and why Plaintiff was chosen to fill that position. Plaintiff does not dispute any of the material facts with regard to Defendants' assertions on these points.

Defendant Harr stated that for a period of time prior to Plaintiff taking leave, general warehouse lead hand employees were responsible for checking in the drivers upon their return to the warehouse on the evening shift. No Delivery Supervisor was assigned to the evening shift at that time. The absence of a Delivery Supervisor on the evening shift created problems in that the drivers were not fulfilling their obligations upon their return to the warehouse in the evenings. The drivers were not cleaning their trucks; furniture was observed to have been missing; and the required paperwork was not being completed in a proper manner. As a result, Defendants made a business decision to schedule a Delivery Supervisor to work the evening shift.

Plaintiff was the Delivery Supervisor Defendant Harr chose to place on the evening shift. Defendant Harr states that she chose Plaintiff to work this shift upon his return for two specific reasons. First, Plaintiff was chosen because the other Delivery Supervisors had been inconvenienced by schedule changes more recently than Plaintiff and were already working day schedules. Second, Defendant Harr thought that, of the company's Delivery Supervisors, Plaintiff was best capable of dealing with the drivers and any resistance they might show to having a Delivery Supervisor present upon their return to the warehouse.

Plaintiff does not dispute Defendants' characterization of the situation that arose as a result of the absence of a Delivery Supervisor on the evening shift. He also does not dispute that the other Delivery Supervisors' schedules had been inconvenienced more recently than his. Finally, Plaintiff agreed with Defendant Harr's assessment that he was the best Delivery Supervisor to handle the drivers when they returned to the warehouse in the evenings.

Plaintiff has failed to come forward with any evidence which would controvert the facts as offered by Defendants.  The only evidence in the record establishes that Defendants could have assigned Plaintiff to the evening shift prior to his taking leave and would have done so even if he had not.  The court, therefore, finds that Plaintiff has failed to show that a genuine issue of fact exists with regard to his claim that Defendants' decision to assign him to the evening shift after his return from leave denied him a benefit to which he was entitled under the FMLA.  While Plaintiff may not proceed with an FMLA claim for the reassignment under an entitlement theory, the court will consider, <u>infra</u>, whether such a claim is viable under a retaliation theory.

### 2. March 2006 Absences

Plaintiff also contends that Defendants violated his substantive rights under the FMLA by terminating his employment upon his return to work after he took leave on March 21st and 22nd, 2006.  In Plaintiff's Complaint, he avers that "on March 21, 2006 through March 22, 2006, he was absent from work due to a qualifying illness under the FMLA."  Compl. ¶ 15.  Plaintiff states that he "gave notice to Defendants of his need to be off work for this illness.  Notwithstanding, Plaintiffs [sic] employment was terminated upon his return to work on March 23, 2006." <u>Id.</u>, ¶ 16. Plaintiff argues that he took leave because he has Scleroderma, a condition which, according to Plaintiff, results in tightness in his neck and back muscles and qualifies as a serious health condition, thereby entitling him to the protections of the FMLA.

The FMLA provides that an employer must provide leave for an employee under the act when he has a "serious health condition that

makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves: (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The DOL regulations provide a more detailed explanation of what qualifies as a "serious health condition" under the continuing treatment prong of § 2611:

> For the purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
>
> * * *
>
> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a).  To prove entitlement to a benefit such as leave or reinstatement upon return from leave, Plaintiff must establish that his condition qualifies as a "serious health condition" under 29 C.F.R. § 825.114(a).  Fink v. Ohio Health Corp., 139 Fed. Appx. 667, 670 (6th Cir. 2005)(observing that the plaintiff must show that her condition qualifies as a serious health condition under the "continuing treatment by a health care provider" standard of 29 C.F.R. § 825.114(a)); see also Lackey v. Jackson County, Tenn., 104 Fed. Appx. 483, 487 (6th Cir. 2004)(noting that "FMLA protection extends only to 'serious health conditions'" and addressing what constitutes such conditions under the FMLA).

Whether an illness qualifies as a serious health condition under the FMLA is a legal question which the court must determine. Bond v. Abbott Labs., 7 F. Supp. 2d 967, 974 (N.D. Ohio 1998).  A plaintiff may not avoid summary judgment on this issue by simply alleging his illness to be a serious health condition.  See id. (citing Carter v. Rental Uniform Serv. of Culpepper, Inc., 977 F. Supp. 753, 761 (W.D. Va. 1997)).  Moreover, a plaintiff seeking to prove that he has a serious health condition under § 825.114(a)(2)(i) must demonstrate that the condition rendered him incapacitated for more than three consecutive days.  As one court has stated:

> [Incapacitation for the purposes of the FMLA] does not mean that, in the employee's own judgment, he or she should not work, or even that it was uncomfortable or inconvenient for the employee to have to work.  Rather, it means that a 'health care provider' has determined that, in his or her professional medical judgment, the employee cannot work (or could not have worked) because of the illness.  If it were otherwise, a note from a spouse, parent, or even one's own claim that one cannot

> work because of illness would suffice. Given the
> legislative history surrounding its enactment, the FMLA
> cannot be understood to establish such liberal standards
> for its application.

Olsen v. Ohio Edison Co., 979 F. Supp. 1159, 1166 (N.D. Ohio 1997)

(internal citations omitted). Generally, then, a plaintiff must

come forward with some evidence that a health care provider has

instructed, recommended, or at minimum authorized an employee not

to work for at least four consecutive days for that employee to be

considered incapacitated for the required period of time under the

FMLA. Bond, 7 F. Supp. 2d at 974.

On March 21, 2006, Plaintiff awoke with a stiff neck and

tightness in his back. Plaintiff called Defendant Harr and told

her that he had a "serious illness due to stiff muscles in [his]

back," and that, as a result, he would not be reporting to work on

Tuesday, March 21, 2006, or Wednesday, March 22, 2006. Alston Dep.

at 160-62. Plaintiff told Defendant Harr that he would be able to

return to work on Thursday, March 23, 2006. According to

Plaintiff's deposition testimony, he visited a doctor on Tuesday

March 21, 2006. Alston Dep. at 157-59. The doctor Plaintiff

visited was unable to diagnose Plaintiff's condition on that date,

so she ordered blood work and follow-up appointments at The Ohio

State University Medical Center ("OSU"). Id. Plaintiff received

the results of the blood tests on Wednesday, March 22nd, but those

tests did not reveal any issues. Id. at 160. Plaintiff then had

samples of tissue removed from his neck and arm at OSU within a

number of days after he first visited the doctor on March 21, 2006.

Id. According to Plaintiff, he was subsequently diagnosed with

Scleroderma. Alston Aff. ¶ 20. On March 23rd, Plaintiff arrived

at work prepared to work his entire scheduled shift, id. at 164-65,

16

but, because he was terminated, he did not complete his shift that day.

Plaintiff has come forward with no evidence, other than his own testimony, that a doctor has diagnosed him with a health condition that required him to be incapacitated for a period longer than three consecutive days. Further, even if Plaintiff had proffered such evidence, the facts remain undisputed that Plaintiff was only incapacitated, or unable to work, for two days. Plaintiff does not meet the period of incapacity required under § 825.114(a)(2)(i) of the regulations to qualify as a serious health condition.

In an attempt to establish that this condition began several days before he actually requested leave, Plaintiff states in his Memo Contra that on March 17, 2006, while at work, he began to experience pain in his neck. Plaintiff provides the affidavits of Messrs. Bussey and Snowden who both state that they observed severe swelling and redness in Plaintiff's neck area. Bussey Aff. ¶ 17; Snowden Aff. ¶ 17. Whether this is true is immaterial, however, as Plaintiff's condition still did not incapacitate him for the requisite period of time. Indeed, Plaintiff does not allege that the pain he experienced caused a period of incapacitation that began on Friday, March 17, 2006. Rather, Plaintiff maintains that he completed his shift that evening before leaving. Alston Aff. ¶ 16. Plaintiff then returned to work on the following day, March 18th, and worked more than twelve hours on that day. Id., ¶ 17. The undisputed evidence establishes that Plaintiff did not have a "serious health condition" under § 825.114(a)(2)(i) because this condition did not render him incapacitated for the requisite period of time.

The court further notes that Plaintiff has not argued or provided any medical evidence that he had a "chronic serious health condition" under § 825.114(a)(2)(iii). Because Plaintiff has come forward with no evidence that would establish that he had a serious health condition under any prong of the regulations, he was not entitled to any protections or benefits under the FMLA for his absences on March 21-22, 2006. Defendants are, therefore, entitled to summary judgment on this claim.

**B.   Retaliation or Discrimination Theory**

The retaliation or discrimination theory arises from § 2615(a)(2), which provides that "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). In contrast to the entitlement theory, the employer's motive is an integral part of the analysis under the retaliation or discrimination theory. Edgar, 443 F.3d at 508. The employer's motive is relevant to the court's determination of retaliation claims because such claims impose liability on employers that take actions against employees specifically because those employees invoked their FMLA rights. Id.

A plaintiff asserting a claim of retaliation under the FMLA must produce either direct or circumstantial evidence of such retaliation. Fountain v. Wellpoint, Inc., No. 1:06-CV-098, 2007 U.S. Dist. LEXIS 51658, at *23 (S.D. Ohio July 17, 2007). Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004). When the plaintiff seeks to rely upon indirect evidence to establish a claim for retaliation

under the FMLA, this court employs the burden-shifting analysis set forth by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817 (1973). <u>See</u> <u>Skrjanc v. Great Lakes Power Serv. Co.</u>, 272 F.3d 309, 313-16 (6th Cir. 2001)(applying the <u>McDonnell-Douglass</u> analysis to a retaliation claim under the FMLA).

Under the <u>McDonnell Douglas</u> analysis, the plaintiff must first prove a prima facie case of discrimination or retaliation by a preponderance of the evidence. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802. If the plaintiff makes such a showing, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its employment decision. <u>Id.</u> at 802-04. If the employer satisfies its burden of production, then the plaintiff must demonstrate that the articulated reason is a pretext offered to mask its discrimination. <u>Id.</u> at 804-06.

The court construes Plaintiff's allegations and arguments, in their totality, as alleging both that his reassignment was in retaliation for the December 2005 leave and that his termination was in retaliation for his December 2005 leave or March 2006 absence. The court, therefore, will address whether Defendants are entitled to judgement as a matter of law under the retaliation theory of Plaintiff's FMLA claims for reassigning Plaintiff and terminating his employment with Sofa Express.

### 1.    Prima Facie Case

To establish a prima facie case of FMLA retaliation, Plaintiff must prove each of the following elements: (1) he availed himself of a protected right under the FMLA by notifying Sofa Express of his intent to take leave; (2) he suffered an adverse employment action; and (3) there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action.

19

Edgar, 443 F.3d at 508.  At the outset, the court notes that to the extent Plaintiff argues that Defendants terminated him in retaliation for his March 21st-22nd absence, he has failed to produce evidence sufficient to establish a prima facie case. Because Plaintiff cannot establish that he had a "serious health condition" which would have entitled him to leave and protection under the FMLA, there can be no retaliation on the part of Defendants against Plaintiff arising from his March 21st-22nd absence from work.  See Nawrocki v. United Methodist Ret. Cmty., Inc., 174 Fed. Appx. 334, 339 (6th Cir. 2006).  The only basis for a retaliation claim, then, is Plaintiff's reassignment to the evening shift and subsequent termination following his December 2005 leave.

Defendants do not dispute that Plaintiff availed himself of a protected right in December 2005; they contend, however, that Plaintiff's reassignment was not an adverse employment action.[1] The Sixth Circuit defines an adverse employment action as one that results in a "materially adverse change in the terms and conditions of [plaintiff's] employment."  McMillian v. Potter, 130 Fed. Appx. 793, 796 (6th Cir. 2005) (quoting Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999)).  "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  Hollins, 188 F.3d at 662 (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)).

---

[1] Defendants do not dispute that Plaintiff's termination qualifies as an adverse employment action.

Defendants argue that Plaintiff's reassignment was not an adverse employment action because Plaintiff received the same pay and benefits, reported to the same supervisors, and performed some of the same duties on the evening shift as he had when he worked the day shift. Specifically, with regard to the duties, Defendants state that Plaintiff prepared driver teams to go on their routes and that Plaintiff communicated with drivers about various issues while they were out on their delivery runs, just as he had done on the day shift. In sum, Defendants argue that although Plaintiff was reassigned to the evening shift, he was just as much a Delivery Supervisor after his return from leave as he was before he took leave.

Plaintiff contends, however, that upon his return from leave, he was demoted from Delivery Supervisor to Delivery Check-in Clerk. According to Plaintiff, the position on the evening shift was less prestigious than his pre-FMLA leave position, held less possibility for advancement within the organization, and required him to work less favorable hours. Plaintiff argues further that upon his return from leave, he was stripped of supervisory responsibilities and that the scope of his duties was significantly narrowed. Plaintiff submitted the affidavits of Bussey and Snowden, in support of these arguments. The affidavits set forth several duties in Plaintiff's role as Delivery Supervisor on the day shift for which he was no longer responsible upon his return from leave. The affidavits also call into question whether Plaintiff's post-FMLA position carried the same supervisory responsibilities and prestige within the organization as Plaintiff's pre-FMLA position. The court finds that Plaintiff has come forward with sufficient

evidence for a reasonable jury to decide that the reassignment was an adverse employment action.

Defendants also dispute that there was any causal connection between Plaintiff's exercise of his FMLA rights and the reassignment or the termination. Defendants contend that the mere temporal proximity between Plaintiff's FMLA leave and his reassignment to the evening shift is insufficient to establish a retaliation claim. Here, however, Plaintiff does not rely solely upon the temporal proximity, but also provides the affidavits in which Bussey and Snowden state that Defendants Fuchs and Harr, along with other members of management at Sofa express, openly expressed their displeasure with Plaintiff for taking leave during the middle of the company's busiest time of the year. Additionally, both Bussey and Snowden state that they have observed that a hostile atmosphere exists toward employees who take leave during the last quarter of the year. This evidence also supports Plaintiff's position that a causal connection exists between his leave in December 2005 and his subsequent termination in March 2006. As Plaintiff has come forward with evidence which would prove each of the three required elements, he has established a prima facie case of retaliation under the FMLA.

### 2. Legitimate, Non-retaliatory Reasons

Because Plaintiff has satisfied his burden of establishing a prima facie case of retaliation, the burden now shifts to Defendants to articulate a legitimate, non-retaliatory reason for the employment decisions. See McDonnell Douglas, 411 U.S. at 804. This burden is not onerous. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). Defendants can satisfy this burden by "clearly set[ting] forth, through the introduction of

admissible evidence, the reasons for the [adverse employment actions]." Id. at 253, 255.

Defendants argue that Plaintiff taking FMLA leave in no way impacted their decision to reassign him to the evening shift. Instead, as discussed, supra, Defendants, through the affidavit of Defendant Harr, assert that the business concerns of the company dictated the need for a Delivery Supervisor on the evening shift and that, of the Delivery Supervisors, Plaintiff was best capable of filling the void. The court concludes that Defendants have articulated a legitimate, non-retaliatory reason for Plaintiff's reassignment to the evening shift.

Similarly, Defendants have also articulated a legitimate, non-retaliatory reason for their termination of Plaintiff's employment. Defendants contend that Plaintiff was fired for leaving work before the scheduled end of his shift on Friday, March 17, 2006, without notifying his managers. On that day, Defendants assert that Plaintiff was scheduled to work from approximately 1:15 p.m. until 9:15 p.m. It is undisputed that at approximately 7:00 p.m., Plaintiff left work without informing anyone, including his managers, Defendants Fuchs and Harr, that he was leaving work for the night.

Defendants have come forward with evidence that after Plaintiff departed work for the night, two incidents arose in which other employees were attempting to locate Plaintiff to discuss or resolve work-related matters. As a result of hearing of these two incidents, Defendants Fuchs and Harr learned that Plaintiff left work before the scheduled end of his shift without notifying anyone. Defendants contend that because Plaintiff was scheduled to

work until 9:15 p.m. on that evening, his departure without notifying any of his managers, was grounds for termination.

In further support of their position that Plaintiff's behavior on March 17, 2006, was the reason for Plaintiff's termination, Defendants have come forward with portions of Plaintiff's disciplinary record with the company. This record establishes that, as the result of a similar incident in November 2004, Plaintiff received a written warning notice for leaving work early without making prior arrangements with the Delivery Manager to do so and without informing the manager on duty that he was leaving. Defendants state that after Defendants Fuchs and Harr became aware of the March 17, 2006 occurrence, they made the decision to terminate his employment. Based on the foregoing, the court finds that Defendants have articulated a legitimate, non-retaliatory reason for Plaintiff's termination.

### 3. Pretext

As Defendants have satisfied their burden of producing legitimate, non-retaliatory reasons for Plaintiff's reassignment and subsequent termination, Plaintiff must now meet his burden of demonstrating that the articulated reasons are merely a pretext for unlawful discrimination. A plaintiff generally may show pretext by demonstrating that the employer's proffered reason: (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action. Joostberns v. United Parcel Serv., 166 Fed. Appx. 783, 790-91 (6th Cir. 2006). Here, the affidavits of Bussey and Snowden provide statements which sufficiently controvert the issue of Defendants' motive for reassigning and subsequently terminating Plaintiff. Those affidavits both indicate that a hostile

24

environment existed towards employees who took leave during the last quarter of the year and that Defendants Fuchs and Harr openly expressed their displeasure with Plaintiff taking leave in December 2005. Plaintiff contends that this is the reason he was reassigned to the evening shift. The court finds that Plaintiff's evidence with regard to the reassignment is sufficient to create a genuine issue of material fact as to Defendants' motive for their employment decision.

Plaintiff also challenges the proffered reason for Defendants' termination of his employment by offering that in his role on the evening shift, he was permitted to leave work once the last truck had arrived back to the warehouse and had been checked in. The affidavits of Bussey and Snowden state that the individuals who held the positions on the evening shift were only required to remain at work until the last truck returned and were not required to notify any of their supervisors prior to leaving. Bussey Aff. ¶¶ 15-16; Snowden Aff. ¶¶ 15-16. A genuine issue of material fact, thus, also exists as to Defendants' motive for the termination. Accordingly, Defendants' motion for summary judgment is denied with regard to Plaintiff's claims that his reassignment to the evening shift and subsequent termination were in retaliation for taking FMLA leave in December 2005.

## II. Breach of Implied Contract

In the second count of the Complaint, Plaintiff alleges that he had an implied contract with Defendant Sofa Express that provided that Plaintiff would be entitled to continued employment and that Plaintiff would not be terminated without just cause. Plaintiff contends that Defendant Sofa Express breached this implied contract by reassigning and subsequently terminating his

25

employment with the company.  Plaintiff has not in any way disputed the Acknowledgment of Receipt ("Acknowledgment") which he signed, confirming his receipt of the Sofa Express Associate's Guide and his agreement that his employment with the company was at-will. The Acknowledgment expressly provides in pertinent part:  "It is agreed that my employment with the Company is at the will of the Company."  Alston Dep. Ex. 1.  Plaintiff does not dispute the authenticity of this document.  Plaintiff's implied contract claim fails as a matter of law.

**III. Breach of Fiduciary Responsibility**

Plaintiff alleges in the third count of his Complaint that Plaintiff may have been eligible for a short-term and/or long-term disability plan and that Sofa Express failed to adequately inform him of his rights and eligibility under those plans, thereby, breaching its fiduciary duty to Plaintiff.  Defendants argue that Plaintiff cannot establish a breach of fiduciary duty claim under Ohio law because:  (1) such a claim is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and (2) Plaintiff understood the voluntary nature of the disability plans and chose not to participate.

Employers which are sponsors of employee benefit plans governed by ERISA have certain fiduciary obligations to provide information to plan participants.  See 29 U.S.C. § 1021 (addressing the duty of disclosure and reporting).  However, Plaintiff's Complaint does not contain sufficient allegations to indicate that the insurance benefits being offered constituted an employer-sponsored ERISA plan.  In his Memo Contra, Plaintiff did not agree with Defendants' argument that the insurance benefits constituted an ERISA plan; rather, he presumably rests his breach of fiduciary

26

duty claim on Ohio law.  Plaintiff has cited no authority for the proposition that an employer has a fiduciary obligation under Ohio law to inform its employees of the details of an optional insurance plan which is not sponsored by the employer.  Plaintiff fails to even remotely develop his argument and cites no case law in support of his claim.  See Walden v. City of Providence, 495 F. Supp. 2d 245, 268 n.22 (D. R.I. 2007) (observing that the court "is not in the business of conjuring a party's arguments," where the party fails to develop his argument and cite any case law).  Accordingly, Defendants' motion for summary judgment as to this claim is granted.

## IV. Retaliatory Discharge and Violation of Public Policy Claims Under Ohio Law

In the fourth and fifth counts of Plaintiff's Complaint, Plaintiff asserts claims for retaliatory discharge and violation of public policy under Ohio law.  The court will first address Plaintiff's public policy claim.  Under this claim, Plaintiff alleges that Ohio has a clear public policy against retaliation by an employer related to the exercise of FMLA rights and in breach of implied contracts.  To the extent this claim is premised upon violations of the FMLA, the Ohio Supreme Court has held that "Ohio does not recognize a cause of action for wrongful discharge in violation of public policy when the cause of action is based solely on a discharge in violation of the FMLA."  Wiles v. Medina Auto Parts, 96 Ohio St. 3d 240, 246 (Ohio 2002); see also Cavin v. Honda of Am. Mfg., 346 F.3d 713, 727 (6th Cir. 2003) (observing the same).  Thus, Defendants are entitled to summary judgment on Plaintiff's public policy claim.  Further, the court has already determined that Defendants are entitled to judgment as a matter of

27

law on Plaintiff's breach of implied contract claim. Consequently, there can be no claim for violation of Ohio public policy on this basis.

Under the claim denominated as "retaliatory discharge," Plaintiff alleges that the termination of his employment after his leave constitutes retaliation in violation of Ohio law. The court finds, however, that for the same reasons that Ohio does not recognize claims of violation of public policy premised upon violations of the FMLA, Plaintiff's claim for retaliatory discharge under Ohio law must also fail. As articulated by this court in Johnson v. Honda of Am. Mfg., 221 F. Supp. 2d 853, 858 (S.D. Ohio 2002), "the remedial scheme set forth in the FMLA adequately protects the public policy expressed in the statute, thereby obviating the need for a common law wrongful discharge claim." See id. (collecting cases). As the rationale for its refusal to recognize a wrongful discharge claim premised upon violations of the FMLA, the Ohio Supreme Court stated:

> If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy. . . . Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

Wiles, 96 Ohio St. 3d at 244 (internal citations omitted). In light of the analysis undertaken by the Wiles court and the comprehensive remedial scheme set forth in the FMLA, this court concludes that Plaintiff would not be able to maintain a claim for retaliatory discharge premised upon violations of the FMLA under Ohio law. Defendants are entitled to summary judgment on both of

Plaintiff's claims under Ohio law for violation of public policy and retaliatory discharge.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's FMLA discrimination or retaliation claims arising out of his December 2005 leave and GRANTED as to the remainder of Plaintiff's claims.

It is so ORDERED.

/s/ James L. Graham
JAMES L. GRAHAM
Senior United States District Judge

Date: October 19, 2007